LABORDE, Judge.
This appeal arises out of a wrongful death action. Defendant-appellant, United States Fidelity and Guaranty Company, seeks a reduction in the amount of damages as set by the trial court. We affirm the decision of the trial court.
Three separate lawsuits were filed as the result of a collision at the intersection of Enterprise Boulevard and Twelfth Street in Lake Charles, Louisiana, on January 12, 1978. The accident involved a 1977 Mercury automobile which was driven by Susie Marie Franks and a 1977 Pontiac station wagon which was driven by Evelyn Lyons and insured by defendant, United States Fidelity & Guaranty Company. Several ladies, Jessie Johnson, Myrtle Short, Allie Granger, and Rena Menard, were riding as *118 guest passengers in the Pontiac station wagon at the time of the accident.
The three lawsuits were consolidated for trial. A judgment was rendered in favor of William Luther Johnson, individually, in the amount of $20,000 for wrongful death of his mother, Myrtle Short, and in favor of William Luther Johnson, as administrator of the estate of his deceased mother, in the amount of $45,000 for Mrs. Short’s pain and suffering prior to death. It is unnecessary to discuss the other judgments rendered in connection with the other claims as there has been no appeal from those judgments by any party.
As stated, this appeal is solely limited to the issue of quantum, the defendant arguing that the awards of $20,000 and $45,000, for wrongful death and survivor’s action respectively, are unreasonable.
Civil Code Article 1934 provides that, in the assessment of general damages, “much discretion must be left to the judge or jury
In Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1977), the Supreme Court stated:
“We do re-emphasize, however, that before a Court of Appeal can disturb an award made by a trial court that the record must clearly reveal that the trier of fact abused its discretion in making its award.”
This standard of review was also discussed in Reck v. Stevens, 373 So.2d 498 (La.1979), where the Supreme Court stated:
“Thus, the initial inquiry must always be directed at whether the trier court’s award for the particular injuries and their effects upon this particular injured person is, a clear abuse of the trier of fact’s ‘much discretion’, La.Civ.C. Art. 1934(3) in the award of damages. It is only after articulated analysis of the facts discloses an abuse of discretion, that the award may on appellate review, for articulated reason, be considered either excessive, Carollo v. Wilson, 353 So.2d 249 (La.1977), Schexnayder v. Carpenter, 346 So.2d 196 (La.1977), or insufficient, Olds v. Ashley, 250 La. 935, 200 So.2d 1 (1967).
Only after such determination of abuse has been reached, is a resort to prior awards appropriate under Coco for purposes of then determining what would be an appropriate award for the present case.”
The defendant admits that it is a difficult task to prove that a 59-year-old man did not love his deceased mother or did not suffer a genuine feeling of loss at her death. Regarding this loss of love and affection the distinguished trial judge observed:
“William Luther Johnson, presently 59, was Mrs. Short’s only child. When he was two years old his father abandoned him and his mother. He has never seen his father since. He went to live with a maternal aunt and uncle because of his mother’s financial condition. He lived there with the aunt and uncle whose name, Johnson, he later took out in appreciation to them, through his grammar and high school days. This was at a town near Shreveport. His mother lived in Shreveport and it was his testimony that throughout his youth he visited with her on almost a weekly basis and that they were close. She had a series of unsuccessful marriages following the abandonment by his father but was unmarried for the 20 years preeeeding her death. After college he moved to Houston, Texas, and his mother to Waco, and the visits became more frequent. After she moved to Lake Charles some 15 years ago, the visits became less frequent but correspondence and phone calls continued. She came to Dallas once a year and sometimes twice a year for extended visits in his home at his expense. The last visit was a 10 day trip in the June preeeeding her death. Prom time to time he sent her small amounts of money. Letters written by her and retained by the Johnsons over the years which were filed in evidence reflect her closeness to her son and his family.
Mrs. William Johnson,' plaintiff’s wife of 33 years, testified without apparent exaggeration to the good relationship that ex *119 isted between her husband and his mother. She told of the visits, the letters, the modest but meaningful support.
Johnson had not yet visited his mother in the hospital following the accident before her death. He was in constant contact with the hospital, however, and appeared not to have been aware, any more so than was her attending physician, of the terminal nature of her condition.
The court got the feeling that his was a relationship which despite an unnatural beginning and economic and distance problems, remained strong and close through the years.
Even so, this is not the closest of mother-son relationships. Were it so, the court would consider an award of $30,000 or more. McKenzie v. Nationwide Mutual Insurance, 363 So.2d 1340 (La.App. 3rd Cir. 1978). As it is, the court will award for loss of love and affection the sum of $20,000.
We agree with the trial judge. The record amply supports the award of $20,000 for loss of love and affection.
Regarding the survival action, we again quote freely from the trial judge’s well written opinion:
“The next issue is the amount to which her estate is entitled for her conscious pain and suffering. She died at 7:00 P.M. January 18, six and a half days after the accident. She had numerous injuries, external and internal. Besides the left per-irenal and retroperitoneal hemorrhaging which was the actual cause of death, she suffered diffuse trauma to chest, back and abdomen, with multiple areas of eechymoses over the right cheek, anterior chest, posterior chest and abdomen, as reported by the autopsy. She had a fractured left clavicle according to Dr. David Drez, an orthopedist. The attending physician, Dr. Charles Anderson, said that although she appeared to be improving she suffered ‘significant’ pain throughout that time. The hospital record reflects continued pain and vomiting. With respect to the severity and the unrelenting nature of her pain and suffering, the court was impressed by the testimony of two lay witnesses who visited her in the hospital on a daily basis. These two ladies, Mrs. Letha Montgomery and Mrs. Gladys Anning, were there to visit their mother, Jessie Johnson, who was Mrs. Short’s roommate and another victim of this accident. They knew Mrs. Short and spent some time with her on all of these visits. Mrs. Anning is herself a registered nurse of considerable reputation in the Lake Charles area. Both of these individuals testified that Mrs. Short was in constant pain, nauseated and vomiting. Mrs. Montgomery assisted her with the use of the bedpan and on one occasion near the end noted that it was half full of blood. On the last day Mrs. Anning said that Mrs. Short was moaning and groaning and that her body was swollen and she was unrecognizable. The testimony of these two lay witnesses taken together with the supportive medical data, causes the court to believe that Mrs. Short suffered intensely throughout the six and a half days until her death. She was conscious throughout this time. An'award of $45,000 will be made.”
From our reading of the record, clearly the judge did not abuse his great discretion in determining the value of the pain and suffering to be $45,000. The record supports this award. See Davis v. Owens, 368 So.2d 1052 (La.1979).
For the above and foregoing reasons the judgment of the trial court is affirmed. All costs of this appeal are taxed to the defendant-appellant.
AFFIRMED.