667 So.2d 1112 (1995)
Barry H. HOBBS, Sr. et al.,
v.
Charles W. RHODES, et al.
No. 95-C-1937.
Court of Appeal of Louisiana, Fourth Circuit.
November 30, 1995.
Rehearing Denied February 22, 1996.
*1113 Brian Carl Bossier, Mickal P. Adler, Blue Williams, L.L.P., Metairie, for Relator, National Union Fire Ins. Co.
Anthony Louis Glorioso, Metairie, for Respondents, Barry J. Hobbs, Sr. and Kristina C. Hobbs.
William G. Argeros, Dan Richard Dorsey, Porteous, Hainkel, Johnson & Sarpy, New Orleans, for Respondent, State Farm Mutual Automobile Ins. Co.
Before LOBRANO, ARMSTRONG and WALTZER, JJ.
WALTZER, Judge.

STATEMENT OF THE CASE
Plaintiff, Barry Hobbs, Sr., is a forklift truck mechanic employed by Briggs-Weaver, Inc. Mr. Hobbs performed on-site repairs of forklifts through contracts that Briggs-Weaver holds with other companies. While he was walking across the "yard area" at the Reily Foods job site, an uninsured motor vehicle injured Mr. Hobbs. This vehicle had *1114 entered the "yard" in order to retrieve scrap metal from that area. Both the driver and the owner of the vehicle were uninsured motorists.
Plaintiff claims uninsured motorist (UM) coverage under his employer's insurance policy. (Reily Foods and their insurer have also been named in the lawsuit.) The Briggs-Weaver insurer is National Union Fire Insurance Company (National Union), who holds auto liability insurance for the employer in several states. The insurer moved for summary judgment on two grounds: first, claiming that UM coverage was waived for the State of Louisiana. Secondly, and in the alternative, even if UM coverage was not waived, the plaintiff is not covered because he is not an insured under the terms of the policy.
The trial court denied the motion for summary judgment. The defendant insurer, National Union, seeks supervisory relief. We granted certiorari, and after review of the application and the opposition thereto, we affirm the trial court judgment.

FIRST ASSIGNMENT OF ERROR
In its first assignment of error, Relator contends that the trial court erred in denying its motion for summary judgment because UM coverage was clearly waived.
In Louisiana, UM coverage is provided for by statute and reflects a strong public policy. The statute promotes recovery of damages for innocent victims of automobile accidents when the tortfeasor is without insurance, and as an additional or excess coverage when he is inadequately insured. Consequently, the statute is liberally construed in order to carry out this public policy objective. This means that UM coverage accompanies any automobile insurance policy unless that coverage has been clearly and unmistakably rejected. Roger v. Estate of Moulton, 513 So.2d 1126, 1130 (La.1987).
The courts have imposed strict requirements for the effective waiver of UM coverage in Louisiana. LSA-R.S. 22:1406(D)(1)(a)(i) states that UM coverage is provided in "not less than the limits of bodily injury liability provided by the policy," although "the coverage required under this Subsection shall not be applicable where any insured named in the policy shall reject in writing, as provided herein, the coverage or selects lower limits." In Roger, the Louisiana Supreme Court interpreted this language to mean:
"[T]he insured or his authorized representative must expressly set forth in a single document that UM coverage is rejected in the State of Louisiana as of a specific date in a particular policy issued or to be issued by the insurer. A writing, regardless of the intention of the insured, of a less precise nature is insufficient to effect a valid rejection." Roger, 513 So.2d at 1132.
The same issue was more recently addressed by the Supreme Court in Tugwell v. State Farm Ins. Co., 609 So.2d 195 (La. 1992). In that case, the court required that the form used to deny UM coverage must give a "meaningful selection" to the insured under LSA-R.S. 22:1406(D)(1)(a)(i). Tugwell, 609 So.2d at 197, citing Henson v. Safeco Ins. Co., 585 So.2d 534, 539 (La.1991): "The insurer must place the insured in a position to make an informed rejection." More precisely, the form must set out at least three options: 1) UM coverage equal to the bodily injury policy limits; 2) UM coverage lower than the bodily injury policy limits; or 3) no UM coverage at all. Tugwell, 609 So.2d at 197.
In its application for writs, the relator claims that the insured, plaintiff's employer, validly waived UM coverage in Louisiana by virtue of having signed a "generic waiver" as well as having signed waivers in other states: New Jersey, South Dakota, Connecticut, California, Hawaii, Kansas, North Carolina and Washington. Furthermore, the insured signed a waiver which ostensibly applies to the state of Florida but which the relator claims can be analogized to Louisiana since it fulfills the requirements for the waiver of UM rights under Roger and Tugwell. National Union supports its argument that the Florida waiver should apply because the word "Florida" does not appear at the heading of the waiver. However, on the second page of that waiver, "Florida" appears at the bottom of the page as an indication that this *1115 waiver is to apply to the State of Florida and to no other states. Moreover, the "Florida" waiver nowhere rejects UM coverage "in the State of Louisiana" as required by statute.
National Union also points to the "generic" waiver signed by the insured, but this waiver does not fulfill the statutory and jurisprudential requirements for waiving UM coverage. The insured must be given the opportunity to make an informed rejection of coverage to the limits of bodily injury liability or below the full coverage. However, the generic waiver in the policy simply states:
In those jurisdictions that have no state requirements for uninsured motorist coverage and/or underinsured motorist coverage or allow an insured to reject his right to such coverage, by signing this endorsement, the insured evidences that no such coverage [is] required. Also, by signing this endorsement the insured further evidences that any and all such coverage as may be waived or rejected is hereby waived or rejected.
This waiver does not contain the requisite language regarding the option to select UM coverage below the limits of regular bodily injury liability. Tugwell specifically states that the insured must make an informed decision and be given the options of full coverage, less than full coverage, or no coverage. Tugwell, 609 So.2d at 198-99. This generic waiver simply does not meet those requirements. Furthermore, this waiver fails to specify the date on which coverage was rejected as required in Roger, 513 So.2d at 1132. Moreover, the generic waiver nowhere rejects UM coverage "in the State of Louisiana" as required by the statute. LSA-R.S. 22:1406(D)(1)(a)(i).
Finally, the insurance policy contains several addenda and endorsement changes to the policy that are specific to certain states. The policy contains sections entitled "Louisiana Changes" and "Louisiana Changes Cancellation and Nonrenewal." However, there is no individual waiver of UM coverage for Louisiana, notwithstanding several other individualized UM waivers.
For these reasons we find that UM coverage was not validly waived by the insured in the State of Louisiana.

SECOND ASSIGNMENT OF ERROR
In the alternative, National Union contends that the trial court erred in denying summary judgment because even if UM coverage was not validly waived, the plaintiff in this case is not covered by the policy. First, National Union claims that the policy does not cover employees. Second, National Union claims that the plaintiff was not anywhere in or near the covered vehicle, therefore making UM coverage inapplicable. We find neither contention has merit.
In Mills v. Hubbs, 597 So.2d 87, 89 (La.App. 4th Cir.1992), writ denied 600 So.2d 677 (La.1992), this Court held:
The Louisiana Uninsured Motorist Statute, LSA-R.S. 22:1406 requires that, unless it is waived, all policies issued in Louisiana shall provide UM coverage for persons who qualify as "insureds" under the policy.
Applying Mills, an employee who is an insured under the policy would also have UM coverage unless that coverage had been waived.
The Mills holding is confirmed in Howell v. Balboa Ins. Co., 564 So.2d 298 (La.1990), in which the Louisiana Supreme Court held:
[A]ny person who enjoys the status of insured under a Louisiana motor vehicle liability policy which includes uninsured/underinsured motorist coverage enjoys coverage protection simply by reason of having sustained injury by an uninsured/underinsured motorist. Howell, 564 So.2d at 301.
We find that the policy covers Briggs-Weaver's employees. The general liability policy contains a specific addendum which includes employees in the general liability coverage. This addendum appears to amend the section of the "Business Auto Coverage Form" which states that an employee is not insured under the employer's policy if said employee is driving his own car. The addendum states:
The following is added to the LIABILITY COVERAGE WHO IS AN INSURED provision: Any employee of your is an "insured" while using a covered "auto" you *1116 don't own, hire or borrow in your business or personal affairs.
This addendum extends liability coverage as it applies to employees to include not only company-owned cars driven by employees, but also to include, among others, employee-owned cars driven by employees in the scope of their employment.
Secondly, even if the addendum referring to employees did not exist, the "Business Auto Coverage Form" includes a section entitled "Who is an insured," which states:
The following are "Insureds:"
a. You for any covered "auto."
b. Anyone else while using with your permission a covered "auto" you own, hire or borrow, except:

. . . . .
(2) Your employee if the covered auto is owned by that employee or a member of his or her household[1]....
(4) Anyone other than your employees, partners, a lessee or borrower or any of their employees, while moving property to or from a covered "auto." (Emphasis added.)
Section b(4) excludes employees from the exception; in other words, an employee, partner or lessee is covered for general bodily injury liability. Since Briggs-Weaver failed to waive UM coverage, then under LSA-R.S. 22:1406(D)(1)(a)(i), Mills, and Howell, UM coverage would extend to the amount of full bodily injury liability, and to all those who are insured under the general policy.
National Union claims that employees cannot be covered under the policy because in the "uninsured Motorist Coverage" portion of the policy, Section "B" declares who is an insured:
1. You.
2. If you are an individual, any "family member."
3. Anyone else "occupying" a covered "auto" or temporary substitute for a covered "auto." The covered "auto" must be out of service because of its breakdown, repair, servicing, loss or destruction.
4. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured."
National Union claims that because employees are not listed in this section, the employee must not be covered. National Union points out that a similar situation was addressed in Davis v. Brock, 602 So.2d 104 (La.App. 4th Cir.1992), writ denied, 605 So.2d 1146 (La.1992), in which this Court held that the plaintiff was not covered under the UM "Who is an Insured" portion of the policy. However, the Court found that the plaintiff in Davis was not in the course and scope of his employment when he was injured. Davis, 602 So.2d at 107. Therefore, because he would not have been covered under the general liability section of the policy, he could not have UM coverage.
In the case before us, it has been established that employees are, in fact, covered under the general liability section of the policy. It is also clear that Mr. Hobbs was in the course and scope of his employment when he was injured. Because Louisiana law requires that UM coverage shall extend to ALL insureds under the policy, and employees are included as insureds in the general liability section of the policy, employees must also be included in the UM coverage. The strict interpretation of UM waivers mandated by the courts requires that UM coverage be rejected specifically. Since the UM Coverage portion of the policy says nothing about employees, we assume that employees are covered to the extend of the general liability. This result is consistent with the strong public policy of providing UM coverage for all insureds. Roger, 513 So.2d at 1130.
As to the insurer's contention that there must be a relationship between plaintiff and the covered auto, the Louisiana Supreme Court held in Howell that UM coverage cannot be qualified by such a requirement. Howell, 564 So.2d at 301. The court held:
UM coverage attaches to the person of the insured, not the vehicle, and that any provision of UM coverage purporting to limit *1117 insured status to instances involving a relationship to an insured vehicle contravenes LSA-R.S. 22:1406(D). Id. (Emphasis added.)
In the instant case, Mr. Hobbs had been walking across the "yard area" to retrieve a screwdriver and to go to the tool shed where he intended to wash his hands. Only after washing his hands was he going to get into his employer's van and insurance policy, it is not necessary that he be closer to the covered vehicle.
This tenet that UM coverage attaches to the person, not the vehicle, is well established in Louisiana. In Elledge v. Warren, 263 So.2d 912, 918 (La.App. 3rd Cir.1972), writ refused 262 La. 1096, 266 So.2d 223 (1972), the court held:
The uninsured motorists protection covers the insured ... while riding in uninsured vehicles, while riding in commercial vehicles, while pedestrians or while rocking on the front porch.
In Frois v. Bullock, 94-0061 (La.App. 4 Cir. 6/30/94), 639 So.2d 1218, writ denied, 94-2056 (La. 11/11/94), 644 So.2d 391, a law firm employee was struck while crossing the street and was found to be covered under the firm's general liability policy and thus UM coverage applied. Since we have determined that the employee is covered under the UM portion of the policy, it is irrelevant that Mr. Hobbs was not actually getting into the company van when he was hit by the uninsured vehicle.

CONCLUSION
A motion for summary judgment should be granted if, and only if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La.C.C.P. art. 966; Dibos v. Bill Watson Ford, Inc., 622 So.2d 677, 680 (La.App. 4th Cir.1993). Under that standard, National Union is not entitled to summary judgment, and the trial court correctly denied its motion.
WRIT GRANTED.
RELIEF DENIED.
NOTES
[1] See, discussion infra regarding the addendum to this section.